IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TEKSYSTEMS, INC., § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | Civil Action No. 3:07-CV-1009-N | |
| § | | |
| GREGORY S. BRADLEY, *et al.*, § | | |
| § | | |
| Defendants. § | | |

## **ORDER**

This Order addresses Defendants Gregory S. Bradley and Modis, Inc.'s ("Modis") motion to dismiss for lack of subject matter jurisdiction [14].[1] Because Plaintiff Teksystems, Inc. ("Teksystems") has shown by a preponderance of the evidence that the amount in controversy in this suit exceeds the jurisdictional amount, the Court denies Defendants' motion.

### I. FACTUAL BACKGROUND

Teksystems, a Maryland corporation with its principal place of business in Hanover, Maryland, is a staffing company that specializes in placing job-seekers who have technical expertise and advanced degrees with companies that have short- and long-term personnel needs. According to Teksystems, the staffing industry is fiercely competitive, and success

---

[1] Defendants also move for leave to supplement [23] their reply brief for this motion to dismiss with evidence that Plaintiff stated in its initial disclosure that "[t]he damages caused by Defendants' actions cannot be quantified at this time and must be determined at trial." The Court grants Defendants' motion for leave to supplement, but nonetheless denies Defendants' motion to dismiss.

in the industry requires that the company build and maintain close relationships with both client companies that have recurring need for temporary personnel and individuals with technical know-how who are willing to accept temporary employment.

In May 2005, Bradley began working at Teksystems as a technical recruiter in the company's North Richland Hills, Texas office. According to Teksystems, over the course of his employment, Bradley was responsible for placements that earned Teksystems approximately $3.3 million in gross revenue per year, and he received approximately $65,000 per year in salary and commissions.

As a condition of his employment, Bradley agreed to the terms of a number of restrictive covenants limiting his ability to use or divulge Teksystems's confidential information, contact or solicit Teksystems's clients or previously placed employees, and obtain employment with competing staffing companies. Specifically, Bradley's Employment Agreement contains a "NON-SOLICITATION COVENANT" providing that:

> EMPLOYEE agrees that upon termination of EMPLOYEE's employment, . . . for a period of eighteen (18) months thereafter EMPLOYEE shall not directly or indirectly:
>
> (a) Approach, contact, solicit or induce any individual, corporation or other entity which is a client or customer of any of the TEK Companies, about which EMPLOYEE obtained knowledge by reason of EMPLOYEE's employment by TEK . . .
>
> (c) Approach, contact, solicit or induce any person who has been a Contract Employee within the two (2) year period prior to the date of termination of EMPLOYEE's employment and about whom EMPLOYEE obtained knowledge by reason of EMPLOYEE's employment with the TEK Companies . . . .

and also a "NON-COMPETE COVENANT" that states:

ORDER – PAGE 2

> EMPLOYEE agrees that upon the termination of EMPLOYEE's employment . . . for a period of eighteen (18) months thereafter EMPLOYEE shall not directly or indirectly engage in or prepare to engage in, or be employed by, any business that is engaging in or preparing to engage in any aspect of TEK's Business in which the EMPLOYEE performed work during the two (2) year period preceding his/her termination of employment, within a radius of fifty (50) miles of the office in which EMPLOYEE worked at the time EMPLOYEE's employment terminated . . . .

On January 24, 2007 Bradley terminated his employment with Teksystems. On March 12, 2007, Bradley began employment with Modis in the company's Fort Worth, Texas office, which is located within fifty miles of Teksystems's North Richland Hills office. Modis, a Florida corporation with its principal place of business in Jacksonville, Florida, directly competes with Teksystems in the market for providing technical consulting and staffing services.

According to Teksystems, since his transition to Modis, Bradley has contacted a number of individuals he placed while working for Teksystems about new employment opportunities offered through Modis and has indirectly solicited at least one company at which he placed employees while working for Teksystems. Specifically, Teksystems alleges that Bradley has directly contacted at least three employees that he placed while working for Teksystems – Harry Hunter, Phil Struble, and Lionel Aviles – and was successful in convincing Aviles to resign from his position at Lockheed Martin, in which Bradley placed him on behalf of Teksystems, to accept employment at J.P.S. Hospital on Modis's behalf. According to Teksystems, Aviles's position at Lockheed Martin was earning Teksystems approximately $4,800 in revenue and $1,200 in profit per month before his resignation. Teksystems further alleges that Bradley indirectly contacted Dyn-Corp, one of Teksystems's

clients who has not worked with Modis in the past, through another Modis representative in an attempt to use Bradley's previous relationship with the company to solicit business on Modis's behalf. According to Teksystems, it had made over $1 million in revenue from placements at Dyn-Corp in the each of the previous two years.

On June 6, 2007, Teksystems brought suit in this Court alleging state law causes of action for breach of contract against Bradley and tortious interference with business relations against both Bradley and Modis. Teksystem seeks injunctive relief preventing Bradley from working for Modis in violation of his Employment Agreement with Teksystems and damages for harm which has already occurred. Modis now moves to dismiss the suit on the basis that the Court lacks subject matter jurisdiction because Teksystems cannot show that the amount in controversy satisfies the jurisdictional requirements of 28 U.S.C. § 1332.

## II. TEKSYSTEMS HAS ESTABLISHED BY A PREPONDERANCE OF THE EVIDENCE THAT THE AMOUNT IN CONTROVERSY EXCEEDS $75,000.

Because Teksystems has shown by a preponderance of the evidence that the amount in controversy exceeds $75,000, the Court has subject matter jurisdiction to hear this case. A federal court has subject matter jurisdiction to hear a case on the basis of diversity of citizenship among the parties provided that all prerequisites of 28 U.S.C. § 1332 are satisfied. Where, as here, the suit does not involve citizens of a foreign nation, diversity jurisdiction requires that the amount in controversy exceed $75,000 and that the suit be between parties who are citizens of different states.[2] *See* 28 U.S.C. § 1332.

---

[2]Here, it is undisputed that the parties are citizens of different states. For jurisdictional purposes, a corporation is deemed a citizen of its state of incorporation and the state where

The burden of establishing that subject matter jurisdiction exists, including that the amount in controversy requirement is met, falls on the party seeking to invoke the court's jurisdiction. *See St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). As a general rule, when the plaintiff alleges a certain dollar amount of injury "the sum claimed by the plaintiff controls if the claim is apparently made in good faith," *id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)), such that a claim may only be dismissed on that basis if it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount," *St. Paul Reinsurance*, 134 F.3d at 1253 (quoting *St. Paul Mercury*, 303 U.S. at 289).

If, as here, the "complaint does not allege a specific amount of damages, the party invoking federal jurisdiction must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount." *St. Paul Reinsurance*, 134 F.3d at 1253. To ascertain the amount in controversy in this situation, courts may look to the complaint "to determine whether it is 'facially apparent' that the claims exceed the jurisdictional amount," *id.* (quoting *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)), or "rely on 'summary judgment type' evidence," *St. Paul Reinsurance*, 134 F.3d at 1253 (quoting *Allen*, 63 F.3d at 1336).

---

its principal place of business is located. *Wachovia Bank v. Schmidt*, 546 U.S. 303, 306 (2006) ("A business organized as a corporation, for diversity jurisdiction purposes, is 'deemed to be a citizen of any State by which it has been incorporated' and, since 1958, also 'of any State where it has its principal place of business.'" (quoting 28 U.S.C. § 1332(c)(1))). Teksystems is a Maryland corporation with its principal place of business in Hanover, Maryland. Modis is a Florida corporation with its principal place of business in Jacksonville, Florida. Bradley is a citizen of the state of Texas.

When the plaintiff seeks injunctive relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). In other words, "[t]he value to the plaintiff of the rights he is seeking to protect is the measure of jurisdiction . . . , even though the value of that right may not be capable of exact valuation in money."[3] *Premier Indus. Corp. v. Tex. Indus. Fastener Co.*, 450 F.2d 444, 446 (5th Cir. 1971).

In actions to enforce a covenant not to compete, it has not been "overly difficult in the past for federal courts to find the requisite jurisdictional amount." *Id.* at 446. In this context, courts have recognized "a number of approaches" to determine the amount in controversy. *Id.* at 446-47. In particular, the Fifth Circuit has endorsed use of the amount of "lost sales revenue" that the plaintiff is likely to face as a result of the defendant employee's employment with a competitor as a measure of the amount in controversy.[4] *See Id.* at 447.

---

[3]The Defendants' principally argue that dismissal is proper because Teksystems cannot at this time state a certain dollar amount for its injuries. However, it is not necessary that a plaintiff be able to quantify its damages at the outset of litigation to satisfy the amount in controversy requirement. Indeed, were a plaintiff able to ascertain an exact dollar amount in a case such this it would likely be the exception rather than rule. *See Premier*, 450 F.2d at 446 ("This action [to enforce a covenant not to compete] was brought in equity, which by its very nature presupposed the difficulty of ascertaining actual damages.").

[4]Other courts, for example, have valued the amount in controversy by reference to the compensation that the employee at issue would have received for the duration of the noncompete agreement had he or she continued working for the plaintiff, rather than its competitor, during that period. *See Component Mgmt. Servs., Inc. v. Am. II Elecs., Inc.*, No. 3:03-CV-1210-P, 2003 WL 23119152, at *2 (N.D. Tex. Sept. 9, 2003) ("[A]ssuming that the only provision at issue in this case is the no-compete clause . . . the amount in controversy would be equal to at least the value of [the employee's] employment while the no-compete was still in effect"(citing *Roberge v. Qualitek Int'l, Inc.*, No. 01-C-5509, 2002 U.S. Dist. LEXIS 1217, at *21-23 (N.D. Ill. Jan. 28, 2002))). Using this method, Teksystems also

Other courts have followed the Fifth Circuit's lead.  *See Viacom, Inc. v. Zebe*, 882 F. Supp. 1063, 1065 (S.D. Fla. 1995) (citing *Premier* and finding that the amount in controversy exceeds the jurisdictional amount because the plaintiff company seeks to prevent the loss of revenue to its competitor from lost store sites, each of which gross "over $500,000 per year."); *Robert Half Int'l, Inc. v. Van Steenis*, 784 F. Supp. 1263, 1265-66 (E.D. Mich. 1991) (citing *Premier* and finding a sufficient amount in controversy where the employee at issue "generated a total of $183,045.00 in revenues for Plaintiff . . . . [and] very likely . . . would generate a similar sum while working for the direct competitor of the Plaintiff").

Using this method of calculation, Teksystems's suit satisfies the amount in controversy requirement because, based on Teksystem's allegations, the Court concludes that Teksystem faces the loss of at least $75,000 in revenue should Bradley's employment with Modis continue.  According to Teksystems's complaint, Bradley was responsible for placements that earned Teksystems approximately $3.3 million in gross revenue per year as a recruiter in the company's North Richland Hills office.  Therefore, from the time that Bradley began his employment with Modis (March 12, 2007) until the expiration of his noncompete clause (July 24, 2008 – 18 months from the end of his employment with Teksystems), Bradley would have generated approximately $4.51 million in revenue for

---

satisfies the amount in controversy requirement.  According to the affidavit of Ryan Skains, Bradley received about $65,000 in compensation (salary plus commissions) per year while working for Teksystems.  Over the course of the 16 months and 12 days from the beginning of Bradley's employment with Modis (March 12, 2007) until the expiration of his noncompete clause (July 24, 2008), the total value of Bradley's employment as measured by his prior compensation would be approximately $88,822 ($5416 per month over 16.4 months), which is well in excess of the jurisdictional requirement of $75,000.

Teksystems had he remained employed with Teksystems and equally productive during that period. Accordingly, Bradley need only redirect to Modis about 1.66% of the revenue that he would have generated for Teksystems for the amount in controversy to be satisfied.

Here, Teksystems's pleadings establish that Bradley is capable, and indeed actively trying, to do so. Specifically, Teksystems has pled that Bradley has directly contacted a number of individuals whom he placed while working with Teksystems in an attempt to convince those individuals to leave their current employment to take jobs offered through Modis's services. In fact, Teksystems has alleged that Bradley was successful in soliciting at least one employee, Lionel Aviles, to leave his position with Lockheed Martin, in which Bradley placed him while with Teksystems, to join J.P.S. Hospital on behalf of Modis. According to Teksystems's complaint, this move alone cost Teksystems $4,800 per month in revenue. Although Teksystems does not specify how much longer Aviles was expected to continue his temporary employment with Lockheed Martin,[5] if Bradley can maintain on average even this level of revenue redirection over the span of his 16.4 months with Modis until the expiration of his noncompete clause, he will have cost Teksystems revenue in excess of the $75,000 jurisdictional amount ($4,800 per month over 16.4 months is $78,720).

In addition, Teksystems has pled that Bradley indirectly contacted Dyn-Corp, one of Teksystems's clients that Modis had no relationship with before hiring Bradley, through

---

[5]The Court notes that Teksystems is in the business of placing individuals with companies having *temporary* personnel needs. Accordingly, the Court refrains from assuming that Aviles's employment with Lockheed Martin would have continued, absent interference, for any particular duration of time.

another Modis representative in an attempt to generate new business for Modis by leveraging Bradley's previous experience with Dyn-Corp as a Teksystems employee. According to the Affidavit of Ryan Skains, Teksystems's Director of Business Relations, Teksystems earned approximately $1.1 million in revenue in 2006 and $1.22 million year-to-date in 2007 from placements at Dyn-Corp made by recruiters in Teksystems North Richland Hills office.

Teksystems's allegations establish that Bradley has attempted with success to solicit on his new employer's behalf employees previously-placed by Teksystems, and further seeks to do the same with at least some of Teksystems's lucrative clientele. Accordingly, the Court concludes that the allegations in Teksystems's complaint show that Bradley is willing and able to redirect a substantial amount of revenue from Teksystems to Modis and therefore finds that Teksystems has established that the value of the right that it seeks to protect through this suit, while indeterminate, more likely than not exceeds $75,000.[6]

---

[6]Modis urges the Court to consider Bradley's affidavit, in which he states that he has neither solicited nor done business with any company or individual while at Modis that he was aware was a Teksystems client. However, this affidavit addresses the merits of Teksystems's allegations, not whether those allegations establish that the amount in controversy exceeds the jurisdictional requirement. *See Component Mgmt.*, 2003 WL 23119152, at *2 (refusing to consider while calculating the amount in controversy in a non-compete enforcement action whether the plaintiff and defendant actually competed or if the plaintiff's business information was truly at risk because "these issues go to the merits of the underlying . . . action"). Modis nowhere disputes any of Teksystems's allegation concerning the amount of revenue Bradley generated or the amount of compensation he received while employed with Teksystems.

## III. CONCLUSION

Because Teksystems has shown by a preponderance of the evidence that the amount in controversy in this suit exceeds the jurisdictional amount, the Court concludes that subject matter jurisdiction exists in this case and therefore denies Defendants' motion.

Signed December 3, 2007.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 10